IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

GARY S. RIENER                                                                                    PLAINTIFF

V.                                              NO. 14-3107

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Gary S. Riener, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I.      Procedural Background:**

Plaintiff filed his current applications for SSI and DIB on March 15, 2012, alleging an inability to work since January 21, 2010, due to bipolar disorder, social phobia, anxiety disorder, personality disorder, depression, arthritis, and back injury. (Tr. 127-134, 178, 182). An administrative hearing was held on May 29, 2013, at which Plaintiff appeared with counsel, and he and his mother testified. (Tr. 23-59).

By written decision dated August 16, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – social phobia; personality disorder; depression; bipolar disorder; and anxiety disorder. (Tr.

1

11). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 11). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: He can understand, remember, and carry out simple, routine, repetitive tasks. He can respond to usual work situations, routine work changes, and supervision that is simple, direct, and concrete. He can occasionally interact with co-workers and the public.

(Tr. 13). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to return to his past relevant work, but there were other jobs that Plaintiff would be able to perform, such as warehouse worker (laborer); conveyor feeder/offbearer; and hand packager. (Tr. 16-17).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on September 26, 2014. (Tr. 1-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc.6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 9, 10).

**II.     Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the

record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See

20 C.F.R. §416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §416.920.

### III. Discussion:

Plaintiff basically challenges the ALJ's RFC determination, arguing that the ALJ wrongly disregarded the opinion of Plaintiff's treating physician, Dr. Rolland Lee Bailey, and the opinion of Dr. Robert L. Hudson, Ph.D., and that he failed to address Plaintiff's GAF scores. (Doc. 9).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-

MWB, 2015 WL 1510159 at *15 (quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013).

With respect to weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014). The opinions of the treating physicians must also be supported by the record as a whole. See Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2004). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Andrews, 771 F.3d at 1102. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

The ALJ discussed in detail the medical evidence documenting Plaintiff's mental impairments, and noted that Plaintiff had not received the type of medical treatment one would expect for a totally disabled individual. (Tr. 14). Nancy Bunting, Ph.D., evaluated Plaintiff on January 18, 2011, and reported that at that time, Plaintiff was not taking any medications and had not taken any since January 2010. (Tr. 253). See Novotny v. Chater, 72 F.3d 669, 671 (8th Cir. 1995)(per curiam)(failure to seek treatment inconsistent with allegations of pain). Dr. Bunting reported that Plaintiff said he began using drugs at the age of 15, and that his last drug use was the day before the evaluation. (Tr. 255). Dr. Bunting opined that Plaintiff's present situation could be better if he was not actively using drugs, and

5

that he did not appear to be a reliable informant because he would change reports of symptoms. (Tr. 256).  Dr. Bunting diagnosed Plaintiff with polysubstance abuse and antisocial personality disorder. (Tr. 256).  She noted that he could do all of his self-care tasks, and smoked one pack of cigarettes a day. (Tr. 257).  She also found that Plaintiff communicated and interacted in a socially adequate, if irritable, manner; communicated in an intelligible and effective manner; had some ability to cope with the typical mental/cognitive demands of basic work-like tasks; sometimes had the ability to deal with co-workers and supervisors by his report; had limited ability to deal with the public based on his behavior in the interview; could handle some work stress or changes; had the ability to attend and sustain his concentration on basic tasks; had some ability to sustain persistence in completing tasks for at least short periods of time; and had the ability to complete work-like tasks within an acceptable timeframe. (Tr. 257-258).

On April 1, 2011, Plaintiff was referred to Health Resources of Arkansas (HRA) by Baxter County Drug Court. (Tr. 311).  Plaintiff received counselling there through October 31, 2011. At his first visit, Plaintiff expressed no intention of stopping the use of THC, did not want any medications, and declined therapy services. (Tr. 315).  It is noteworthy that the May 27, 2011 office visit notes indicate that Plaintiff was there because he was required to be, so he was not interested in learning or getting better. (Tr. 319).  Plaintiff was diagnosed at HRA with cannabis dependence and social phobia, and was initially given a GAF score of 45. (Tr. 315).

While receiving treatment at HRA, Plaintiff indicated that he could not afford to see a physician and was therefore referred to the Christian Clinic. (Tr. 311).  At his next visit to HRA, Plaintiff reported that he received paperwork for the Christian Clinic, but it "was too

6

much paperwork and they ask too much personal information." (Tr. 317). Although economic justifications for lack of treatment can be relevant to a disability determination, lack of interest in completing the paperwork is not, in the Court's opinion, economic justification. There is no record of any indication that Plaintiff was denied treatment due to the lack of funds. See Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992), (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Further, it is noteworthy that Plaintiff was apparently able to afford to smoke one pack of cigarettes a day and use TCH on a consistent basis during the relevant time period, which discredits his disability allegations. See Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Riggins v. Apfel, 177 F.3d 689, 693 (8th Cir. 1999); Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir. 1997). At his last session at HRA on October 31, 2011, Dr. Adam Brazas reported that Plaintiff was not interested in therapy and only attended sessions to complete the required therapy sessions. (Tr. 325). Plaintiff received a GAF score of 45 at his last session.

Plaintiff thereafter began seeing Dr. Bailey, a family physician, on November 28, 2011. (Tr. 333). Plaintiff reported to Dr. Bailey on December 17, 2011, that Xanax helped a lot. (Tr. 332). On January 10, 2012, Dr. Bailey reported that Plaintiff seemed calmer, and was doing better overall. (Tr. 331). On February 14, 2012, Dr. Bailey reported Plaintiff was still depressed with underlying anxiety (Tr. 328), and on March 20, 2012, Plaintiff reported to Dr. Bailey that he could not afford Effexor or other medications, and that he was better. (Tr. 328). On June 17, 2012, Dr. Bailey completed a Medical Source Statement, wherein he indicated, by checkmarking boxes in a form, that Plaintiff had no useful ability to function in the areas of working in coordination with or proximity to others without being unduly

7

distracted and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 380-381). The report also indicated that Plaintiff was unable to meet competitive standards in: maintaining regular attendance and being punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; completing a normal workday and work week without interruptions from psychologically based symptoms; asking simple questions or requesting assistance; getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and dealing with normal work stress. (Tr. 381). The records reflect Plaintiff saw Dr. Bailey through March 21, 2013, when Dr. Bailey reported that Plaintiff was still down and depressed. (Tr. 397).

On May 4, 2012, Robert L. Hudson, Ph.D., conducted a Mental Diagnostic Evaluation. (Tr. 339). Dr. Hudson noted that Plaintiff was not seeing a mental health provider, but was being seen by his primary care physician for psychotropic medication management. (Tr. 339). Plaintiff was supposed to be taking Effexor, but said he could not afford it. (Tr. 339). Dr. Hudson opined that Plaintiff had probably had extensive mental problems that went untreated, and that it was not clear what adequate psychiatric treatment would be "as he continues to be unmotivated." (Tr. 340). Dr. Hudson noted that Plaintiff was evasive as to his last substance use, and offered up little, if anything, spontaneously. (Tr. 340). Dr. Hudson diagnosed Plaintiff as follows:

Axis I:     Bipolar Disorder NOS
            Disruptive Behavior Disorder NOS (hx)

Axis II:    Personality Disorder NOS

Axis III:   Defer to physical

Axis V:     GAF – 48-52

8

(Tr. 341). He further opined that Plaintiff was limited in social interaction, but that there appeared to be no significant limitations in communication ability. (Tr. 341-342). He also found that there did not appear to be any significant mental/cognitive limits on basic work-like tasks. (Tr. 342). Dr. Hudson found Plaintiff exhibited limits on his ability to attend and sustain concentration on basic tasks and on persistence in completing tasks, but had no significant limits on completion of tasks in a timely fashion. (Tr. 342). He did note that initiative was totally lacking. (Tr. 342).

On May 8, 2012, non-examining consultant, Sheri Simon, Ph.D., completed a Psychiatric Review Technique form and Mental RFC Assessment, and concluded that Plaintiff was capable of performing unskilled work. (Tr. 353, 367, 369).

In his decision, the ALJ addressed the reports of Dr. Bunting, HRA, Dr. Bailey, and Dr. Hudson, and concluded that although Plaintiff may have had some problems functioning, the objective evidence did not support any marked impairment in adaptive functioning. (Tr. 15). He therefore concluded that Plaintiff could perform unskilled work. (Tr. 15). The ALJ found that Dr. Bailey's Medical Source Statement was not supported by the record, and was outside his area of expertise. (Tr. 15). The regulations state that more weight is generally given to the opinion of a specialist about medical issues related to the area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. §404.1527(c)(5). The Court agrees that Dr. Bailey's Medical Source Statement is not supported by the record or his own office records. Finally, the Medical Source Statement consists of a conclusory checkbox form, leading the Court to conclude that the ALJ considered and afforded proper weight to the various opinions of all of the physicians. See Anderson v. Astrue, 696 F.3d 790, 794 (8th

Cir. 2012)(holding that a conclusory checkbox form has little evidentiary value when it "cites no medical evidence, and provides little to no elaboration").

In addition, as noted by Defendant, Dr. Hudson's mental consultative evaluation supports the ALJ's RFC Assessment because Dr. Hudson found that Plaintiff had only some limits in attending and sustaining concentration and persistence in completing tasks and could still complete tasks in a timely fashion, and that Plaintiff had no significant limitations in communication or mental cognitive ability to perform basic work tasks. The ALJ's RFC takes Plaintiff's mental limitations into consideration by limiting him to unskilled work.

The Court is of the opinion that after evaluating the record as a whole, there is substantial evidence to support the ALJ's conclusions relating to the opinions of Dr. Bailey and Dr. Hudson, and his RFC determination.

With respect to the GAF scores, Plaintiff argues that the ALJ's RFC determination made no consideration for Plaintiff's consistently low GAF scores. In his decision, the ALJ noted that Dr. Hudson gave Plaintiff a GAF score of 48-52 (indicative of serious to moderate symptoms in social, occupational, or school functioning). (Tr. 14).  With respect to the other GAF scores, the record reflects that Plaintiff was given a GAF score of 45 on April 1, 2011 (Tr. 315), thereafter consistently received a GAF score of 50, up until October 31, 2011 (Tr. 320-323), and a received a score of 45 on October 31, 2011 . (Tr. 325).  A GAF score is not essential to the RFC's accuracy. Howard v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002). "[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it." Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010). , "[t]he Eighth Circuit has rejected an argument that the ALJ's failure to discuss GAF scores requires reversal." Martin ex rel. RTDR v. Colvin, No. 4:12-cv-00422, 2013

WL 4591374 at *7 (Aug. 28, 2013), citing Wright v. Astrue, 489 Fed. Appx. 148, 149 (8th Cir. 2012 (unpublished).  In this case, the Court believes the ALJ was correct by giving greater weight to the medical evidence rather to the GAF scores.

With respect to the ALJ's credibility analysis, the ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  The Court finds there is substantial evidence to support the ALJ's credibility analysis.

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court also finds that the hypothetical questions the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.  Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing such jobs as warehouse worker (laborer), conveyor feeder/offbearer, and hand packager.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from

vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**IV.　Conclusion**:

　　Accordingly, having carefully reviewed the record, the Court finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision is hereby affirmed.  The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

　　IT IS SO ORDERED this 8th day of February, 2016.


　　　　　　　　　　　　　　　　　　　*/s/ Erin L. Setser*
　　　　　　　　　　　　　　　　　　　HONORABLE ERIN L. SETSER
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE